IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MATTHEW MARSHALL, et al.       :

                              :

    v.                          :   Civil Action No. DKC 24-1549

                              :

TOWN OF BLADENSBURG MARYLAND,
et al.                        :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights and tort action brought by Plaintiffs Matthew Marshall ("Mr. Marshall") and Maria Day-Marshall ("Mrs. Day-Marshall"), individually and as husband and wife (collectively "Plaintiffs") are: (1) the motion to dismiss filed by Ty Tinsley ("Officer Tinsley") (ECF No. 30); and the (2) the motion to dismiss, or in the alternative, motion to bifurcate and stay discovery filed by the Town of Bladensburg ("Bladensburg"), the Bladensburg Police Department ("BPD"), and Chief of Police Tyrone Collington, Sr. ("Chief Collington") (ECF No. 36) (collectively "Defendants").[1] The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following

---

[1] On February 6, 2025, Henry Arriola ("Mr. Arriola") and Alicia Villanueva ("Ms. Villanueva") filed a motion to dismiss Counts VII and IX of the amended complaint (ECF No. 46). Plaintiffs responded on March 3, 2025 (ECF No. 53), and Mr. Arriola and Ms. Villanueva replied on March 14, 2025 (ECF No. 54). This motion will not be resolved in this Memorandum Opinion.

reasons, the motion filed by Officer Tinsley will be granted in part, the motion filed by Bladensburg, BPD, and Chief Collington will be granted in part, and Plaintiffs' state law claims will be remanded to state court for further proceedings.

## I.   Background[2]

On October 10, 2022, Mr. Marshall was injured when the car he was driving was hit by a car driven by Mr. Arriola, who was fleeing from Officer Tinsley at speeds of up to eighty miles per hour.  As a result of the accident, Mr. Marshall suffered life-altering injuries.  The Marshalls have sued Officer Tinsley, Bladensburg, BPD, and BPD's Chief of Police, as well as Mr. Arriola and his mother, who owned the car.  The Marshalls assert a variety of federal and state law claims.

### A. The Accident

On October 10, 2022, at approximately 7:54 p.m., Officer Tinsley was patrolling the 4500 block of Annapolis Road when he saw a vehicle, driven by Mr. Arriola, exceeding the posted speed limit of thirty miles per hour.  (*Id.* ¶ 17).   Officer Tinsley pursued Mr. Arriola to the 4000 block of Bladensburg Road.  (*Id.*).  Officer Tinsley activated his police cruiser's emergency lights to initiate a traffic stop but did not activate the emergency sirens.

---

[2] The following facts are set forth in the complaint and construed in the light most favorable to Plaintiffs.

(*Id.* ¶¶ 18; 20).  Mr. Arriola did not stop his vehicle, but instead fled from Officer Tinsley at a high-speed.  (*Id.*).

Officer Tinsley pursued Mr. Arriola, driving at speeds up to eighty miles per hour, fifty miles over the posted speed limit. (*Id.* ¶ 16).  Officer Tinsley pursued Mr. Arriola "near and toward the border between Maryland and Washington, D.C."  (*Id.* ¶ 21). Mr. Arriola drove through a red light at the intersection of Bladensburg Road and Fort Lincoln Drive and made high-speed frontal impact with Mr. Marshall's vehicle, which was lawfully executing a left turn onto Bladensburg Road at the time.  (*Id.* ¶ 22).

After the collision, Mr. Marshall was transported to MedStar Washington Hospital Center in critical and unstable condition. (*Id.* ¶ 23).  Mr. Marshall suffered life-altering and permanent injuries because of the collision, including:

> (1) Acute subarachnoid hemorrhage,
> (2) Right parietal subdural hematoma,
> (3) Intraventricular hemorrhage,
> (4) Multiple vertebral fractures,
> (5) Paralysis,
> (6) Orthostatic hypotension,
> (7) Left orbital floor fracture,
> (8) Splenic pseudoaneurysm, and
> (9) Respiratory failure.

(*Id.* ¶ 47).  On October 11, 2022, the Major Crash Investigations Unit interviewed Ms. Johana Lopez, the passenger in Mr. Arriola's vehicle.  Ms. Lopez stated that she and Mr. Arriola were aware they were being pursued by law enforcement at the time of the accident.  (*Id.* ¶ 24).

At some point Ms. Villanueva, Mr. Arriola's mother, informed law enforcement that the vehicle driven by Mr. Arriola at the time of the accident was registered under her name and that she had entrusted Mr. Arriola with it on the day of the accident. (*Id.* ¶ 37). Officer Tinsley was terminated from his position with BPD for actions arising from the accident. (*Id.* ¶ 36).

**B. The BPD**

Bladensburg is a municipal corporation created and operating under the laws of the State of Maryland in Prince George's County, Maryland. (ECF No. 22 ¶ 3). "BPD is the primary law enforcement agency for Bladensburg. BPD creates, implements, and ratifies policies, practices, habits, customs, and procedures and is responsible for the training and supervision of officers regarding the apprehension of suspected criminals, particularly those during high-speed vehicle pursuits." (*Id.* ¶ 4).

Chief Collington has been the BPD's Chief of Police since 2020. (*Id.* ¶ 5). As Chief of Police, Chief Collington "has authority over all units of the [BPD] and its members[.]" (*Id.*). "[Chief] Collington may authorize personnel to deviate from the provisions of the [BPD's] General Orders Manual or standard operating procedures when such deviation is determined to be in the public interest." (*Id.*). Chief Collington may also "reprimand, suspend, demote, or dismiss any member for violating any provisions of the General Orders Manual or standard operating

procedures, Bladensburg's Personnel Policy or Operating Procedure, and any State, Federal, or local law or ordinances." (*Id.*).  At the time of the accident, Officer Tinsley was an officer with BPD. (*Id.* ¶ 6).

### C. General Order 310

"High-speed police pursuits such as the one at issue herein are known by Defendants Bladensburg, BPD, [Chief] Collington, and [Officer] Tinsley to be extremely dangerous since they knowingly often place the police officers, suspect, individuals in the suspect's vehicle, and the general public at risk for serious bodily injury and death. (*Id.* ¶ 25).  On July 1, 2012, Bladensburg and BPD adopted "General Order 310, which dealt with police vehicle pursuits[.]"  (*Id.* ¶ 26).  On or about February 2022, Officer Tinsley was sanctioned for violating General Order 310.04's vehicle pursuit protocols.  (*Id.* ¶¶ 42-43).

### D. Procedural Background

Plaintiffs commenced this action in the Circuit Court for Prince George's County on April 16, 2024 (ECF No. 4).  On May 29, 2024, Defendants filed a notice of removal stating that this court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 42 U.S.C. § 1367 (ECF No. 1).  Plaintiffs filed an amended complaint on July 30, 2024 (ECF No. 22).  On August 13, 2024, Officer Tinsley moved to dismiss the amended complaint (ECF No. 30), and on August

29, 2024, Bladensburg, BPD, and Chief Collington moved to dismiss the amended complaint or, in the alternative, to bifurcate and stay discovery. (ECF No. 36). On September 27, 2024, Plaintiffs opposed both motions (ECF Nos. 37; 39), and on September 18, 2024, Officer Tinsley replied (ECF No. 40) and Bladensburg, BPD, and Chief Collington replied (ECF No. 41).

## II.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint need only satisfy the standard of Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)). A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that defendant is liable for the misconduct alleged."

*Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).  Legal

conclusions couched as factual allegations are insufficient,

*Iqbal*, 556 U.S. at 678, as are conclusory factual allegations

devoid of any reference to actual events, *United Black Firefighters*

*of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## III. Analysis

Plaintiffs assert the following claims:

Count I —        42 U.S.C. § 1983 - Unconstitutional
                 Custom, Pattern, and/or Practice of
                 Unlawful Seizure, Excessive Use of Force,
                 and Improper Use of Police Powers against
                 Bladensburg, BPD, and Chief Collington

Count II —       42 U.S.C. § 1983 - Unconstitutional
                 Custom, Pattern, and/or Practice of
                 Failure to Train, Supervise, and
                 Discipline against Bladensburg, BPD, and
                 Chief Collington

Count III —      42 U.S.C. § 1983 - Excessive
                 Force/Improper Use of Police Powers
                 against Officer Tinsley

Count IV —       Violation(s) of Article 24 of the
                 Maryland Declaration of Rights against
                 Bladensburg, BPD, Chief Collington, and
                 Officer Tinsley

Count V —        Violation(s) of Article 26 of the
                 Maryland Declaration of Rights against
                 Bladensburg, BPD, Chief Collington, and
                 Officer Tinsley

Count VI —       Negligence against Bladensburg, BPD,
                 Chief Collington, and Officer Tinsley,
                 and Mr. Arriola

Count VII —      Gross Negligence against all Defendants

Count VIII —    Negligent Hiring, Training, Retention,
                and Supervision against Bladensburg,
                BPD, Chief Collington

Count XI —      Battery against all Defendants

Count X —       Negligent Entrustment against Ms.
                Villanueva

Count XI —      Loss of Consortium against all Defendants

(ECF No. 22).

**A. Federal Claims**

Under 42 U.S.C. § 1983, a plaintiff may bring a claim against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  A person acts under color of state law "only when exercising power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *Polk Cnty. v. Dodson*, 454 U.S. 312, 317-18 (1981) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  Section 1983, however, "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979)).

Thus, to state a claim under Section 1983, a plaintiff must allege (1) a right secured by the constitution or laws of the

United States was violated, and (2) the alleged deprivation was "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. 662, 676 (2009).

**1. Section 1983 Excessive Force/Improper Use of Police Powers**

In Count III of the complaint, Plaintiffs allege violations of both the Fourth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983. Specifically, Plaintiffs allege that Officer Tinsley's actions "constitute excessive and unlawful force in gross violation of [Mr. Marshall's] rights under the Fourth and Fourteenth Amendment. (ECF No. 22 ¶ 40). Officer Tinsley does not dispute that he was acting under color of state law but argues dismissal of Count III is proper because Plaintiffs have not plausibly plead a violation of 42 U.S.C. § 1983, and even if they did, he is entitled to qualified immunity. (ECF No. 30-1, 8-19).

**a. The Fourth Amendment**

"The Supreme Court has interpreted the Fourth Amendment to prohibit a law enforcement officer from using excessive force to effect a seizure." *Middleton v. Koushall*, No. 20-CV-3536-ELH, 2024 WL 1967816, *29 (D.Md. May 3, 2024) (citing *Graham v. Connor*,

490 U.S. 386, 394 (1989)) (citations omitted).  "[C]laim[s] that
law enforcement officials used excessive force in the course of
making an arrest, investigatory stop, or other 'seizure' . . . are
properly  analyzed  under  the  Fourth  Amendment's  'objective
reasonableness'  standard,  rather  than  under  a  substantive  due
process standard."  *Graham*, 490 U.S. at 388.[3]

"A 'seizure' triggering the Fourth Amendment's protections
occurs only when government actors have, 'by means of physical
force  or  show  of  authority, . . .  in  some  way  restrained  the
liberty of a citizen.'"  *Id.* at 395, n.10 (quoting *Terry v. Ohio*,
392 U.S. 1, 19, n.16 (1968)).  The United States Court of Appeals
for the Fourth Circuit has explained:

> [O]ne is "seized" within the [F]ourth [A]mendment's
> meaning only when one is the intended object of a
> physical restraint by an agent of the state. This means
> that  a  [F]ourth  [A]mendment  seizure  may  occur
> notwithstanding  that  the  person  restrained  was
> mistakenly  thought  to  be  another,  because  he
> nevertheless is the intended object of the specific act
> of physical restraint. But it does not mean . . . that
> a seizure occurs just so long as the act of restraint
> itself is intended . . . though it restrains one not
> intended to be restrained. *See Ansley v. Heinrich*, 925
> F.2d  1339,  1344  (11th  Cir.  1991)  (holding  that
> "unintended consequences of government action [cannot]
> form the basis for a [F]ourth [A]mendment violation");
> *see also El Centro v. United States*, 922 F.2d 816, 822
> (Fed. Cir. 1990).

---

[3] The Fourth Amendment is applicable to the states through
the Fourteenth Amendment's Due Process Clause.  *See Mapp v. Ohio*,
367 U.S. 643, 654–56 (1961).

*Rucker v. Harford Cnty.*, 946 F.2d 278 (4th Cir. 1991).  Indeed, an injured bystander may not bring an excessive force claim against an officer when the force was directed at another person:

> The protections of the Fourth Amendment—either independently or through the Fourteenth Amendment's Due Process Clause—do not, however, extend to bystanders who claim harm from the use of excessive force by a law enforcement officer that was intended for someone else. That is because a "[v]iolation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). In other words, a Fourth Amendment excessive force claim is available only to a person who an officer intentionally seizes. Id. at 596-97, 109 S.Ct. 1378.

*Cunningham v. Baltimore Co.*, 487 Md. 282, 291-92 (2024), *cert. denied*, --- U.S. ---, 2025 WL 299518 (2025).

The complaint generally alleges that Officer Tinsley "caused [Mr.] Arriola to crash his vehicle into [Mr. Marshall]" and that "[e]ven if [Mr. Marshall] was at liberty to leave the scene of [Officer] Tinsley's pursuit, the immediate severity of [Mr.] Marshall's injuries constrained his liberty and freedom of movement to a significant degree."  (ECF No. 22 ¶¶ 167-169). Plaintiffs have not alleged that Officer Tinsley intended to restrain Mr. Marshall, or any other bystander,[4] and therefore they have not alleged a Fourth Amendment violation.

---

[4] In their opposition, Plaintiffs argue that "[Officer] Tinsley intended to seize nearby motorists as a means of terminating [Mr.] Arriola's attempted escape[,]" (ECF No. 37, at 5), but Plaintiffs have not alleged any facts in their amended complaint to support that conclusion.

b. **The Fourteenth Amendment**

Plaintiffs also allege Officer Tinsley deprived Mr. Marshall of his right to life and liberty without due process of law, in violation of the Fourteenth Amendment.  As also noted by the Supreme Court of Maryland:

> However, some courts have recognized that a bystander who lacks the ability to bring a claim under the Fourth Amendment may be able to pursue an excessive force claim directly under the substantive component of the Fourteenth Amendment's Due Process Clause. *See Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991) ("the substantive protections of the due process clause may" "extend to unintentionally injured bystanders" (internal quotations omitted)). Such claims, if recognized, would not be subject to the "objectively reasonable" test applied to Fourth Amendment excessive force claims, but to the more demanding "shocks the conscience" standard applicable to substantive due process claims. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (recognizing the shocks the conscience standard).

*Cunningham*, 487 Md. at 292 (footnote omitted).

"Substantive due process violations are actionable under § 1983."  *Johnson v. Balt. Police Dep't*, 452 F.Supp.3d 283, 300 (D.Md. 2020) (citing *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). "Indeed, the Due Process Clause was intended to prevent the government from abusing [its] power, or employing it as an instrument of oppression." *Id.* (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)) (internal quotation marks and citation omitted).

The court, in *Johnson*, explained:

12

> In cases like this, which allege unconstitutional action
> by an arm of the executive branch of government, "only
> the most egregious official conduct can be said to be
> 'arbitrary in the constitutional sense,'" such that a
> substantive due process violation lies. *Cnty. of
> Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708,
> 140 L.Ed.2d 1043 (1998) (quoting *Collins v. City of
> Harker Heights*, 503 U.S. 115, 129, 112 S.Ct. 1061, 117
> L.Ed.2d 261 (1992)). Specifically, the Supreme Court in
> *Lewis* reaffirmed that only official conduct that "shocks
> the conscience" will give rise to a substantive due
> process violation. *Id.* at 846-47, 118 S.Ct. 1708; *see
> also, e.g., United States v. Salerno*, 481 U.S. 739, 746,
> 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("So-called
> 'substantive due process' prevents the government from
> engaging in conduct that 'shocks the conscience,' or
> interferes with rights 'implicit in the concept of
> ordered liberty.'" (citations omitted)); *Temkin v.
> Frederick Cnty. Comm'rs*, 945 F.2d 716, 720 (4th Cir.
> 1991) ("[C]onduct which 'amount[s] to a brutal and
> inhumane abuse of official power literally shocking to
> the conscience,' violates the substantive guarantees of
> the Due Process Clause. . . ." (quoting *Hall v. Tawney*,
> 621 F.2d 607, 613 (4th Cir. 1980))). The "most likely"
> sort of conduct to "shock the conscience," the Court
> noted, was "conduct intended to injure in some way
> unjustifiable by any government interest." *Lewis*, 523
> U.S. at 849, 118 S.Ct. 1708 (citing *Daniels v. Williams*,
> 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)).

*Johnson*, 452 F.Supp.3d at 300. "An officer's actions motivated by

an intent to harm a suspect are no less conscience shocking,

whether the resulting harm accrues to the intended target (the

suspect), or an innocent third party." *Id.*, at 303 (collecting

cases).

In the context of high-speed chases, the Supreme Court of the

United States has explained that a "high-speed chase[] with no

intent to harm suspects physically or to worsen their legal plight

do not give rise to liability under the Fourteenth Amendment,

redressable by an action under § 1983." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998). There may, however, be an actionable claim under § 1983 "when a citizen suffers or is seriously threatened with physical injury due to a police officer's *intentional misuse* of his vehicle." *Id.*, at 854 n. 13 (quoting *Checki v. Webb*, 785 F.2d 534, 538 (5th Cir. 1986).

Officer Tinsley argues that Plaintiff's allegations "fall woefully short of the 'shocks-the-conscience' threshold." (ECF No. 30-1, at 17). Officer Tinsley contends that Plaintiffs "do not allege that Officer Tinsley caused Mr. Arriola's high-speed driving in the first place" and that they fail to "plead that the nature or duration of the pursuit were of a conscience-shocking nature[.]" (ECF No. 30-1, at 17). Plaintiffs allege that Officer Tinsley "observed that the vehicle driven by Arriola exceeded the posted speed limit" and that once Officer Tinsley began to pursue Mr. Arriola, Mr. Arriola "fled from Officer Tinsley at a high rate of speed." (ECF No. 22 ¶¶ 18-19). Plaintiffs allege that Officer Tinsley "failed to use his emergency sirens" while pursuing Mr. Arriola "near and toward the state border between Maryland and Washington, D.C." (ECF No. 22 ¶¶ 20-21).

Plaintiffs have not alleged any facts that imply Officer Tinsley's actions were driven by an "improper or malicious motive," or that Mr. Marshall's injuries were due to Officer Tinsley's "intentional misuse of his vehicle." *See Lewis*, 523 U.S. at 854-

14

855.  Further, Plaintiffs have not alleged Officer Tinsley had an "intent to harm" Mr. Arriola, let alone Mr. Marshall or any other bystander.  *See generally Johnson*, 452 F.Supp.3d at 302-303. Instead, this is another in "a long line of cases holding that a police officer's engaging in a high-speed pursuit, eventually leading to the death of an innocent bystander uninvolved in the pursuit, is not, by itself, conscience-shocking behavior." *Johnson*, 452 F. Supp. 3d at 301 (citing *Meals v. City of Memphis*, 493 F.3d 720, 723-24, 730-31 (6th Cir. 2007); *Slusarchuk v. Hoff*, 346 F.3d 1178, 1180-81, 1183 (8th Cir. 2003); *Onossian v. Block*, 175 F.3d 1169, 1170, 1172 (9th Cir. 1999); *Fagan v. City of Vineland*, 22 F.3d 1296, 1299-1300, 1307-08 (3d Cir. 1994) (en banc); *Temkin*, 945 F.2d at 718, 723).

Accordingly, because Plaintiffs have not plead a violation of the Fourth or Fourteenth Amendments, they have failed to state a claim under § 1983 and Count III of the complaint will be dismissed.

### c. Qualified Immunity

Officer Tinsley generally contends that even if he violated Mr. Marshall's Fourth or Fourteenth Amendment rights, he is entitled to qualified immunity on Count III.  (ECF No. 30-1, 18-19).  It is not necessary to address this argument in light of the dismissal of Count III for failure to state a claim.

### 2. *Monell* Claims

In Counts I and II, Plaintiffs assert § 1983 claims against Bladensburg, BPD, and Chief Collington for a violation of the Fourth and Fourteenth Amendments, based on *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). Plaintiffs allege that Bladensburg, BPD, and Chief Collington have an: (1) unconstitutional custom, pattern, or practice of unlawful seizure, excessive force, and improper use of police powers and (2) an unconstitutional custom, pattern, and/or practice of, failure to train, supervise and discipline. (ECF No. 22 ¶¶ 23-39).

Bladensburg, BPD, and Chief Collington argue that Counts I and II should be dismissed because (1) Plaintiffs failed to allege that Officer Tinsley violated a constitutional right, (2) there is no *respondeat superior* liability, and (3) even if Plaintiffs sufficiently alleged Officer Tinsley violated a constitutional right, Plaintiffs have failed to state claim attributable to Bladensburg and Chief Collington. (ECF No. 36-1, at 10-20).[5]

---

[5] Bladensburg, BPD, and Chief Collington move to dismiss BPD as a defendant because "it is not a legal entity capable of being sued." (ECF No. 36-1, at 9). Because BPD is not a cognizable legal entity separate from Chief Collington in his official capacity and Bladensburg as the county government that BPD is an agency of, BPD will be dismissed from Counts I and II of this lawsuit. *See Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989); *see also Hines v. French*, 157 Md.App. 536, 573 (2004).

This court has previously explained *Monell* liability:

> Under *Monell*, "[l]iability arises only where the constitutionally offensive acts of city employees are taken in furtherance of some municipal 'policy or custom.'" *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984). Policy or custom may be found in a number of ways, such as "in . . . 'persistent . . . practices of [municipal] officials having the de facto force of law.'" *Milligan*, 743 F.2d at 229. "[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell*, 436 U.S. at 690–91. Policy or custom may also "be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees." *Milligan*, 743 F.2d at 229–30. Under narrow circumstances, policy may also be inferred "from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Id.* at 230. However, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." *Id.*

*Lanford v. Prince George's Cnty.*, 199 F.Supp.2d 297, 304 (D.Md. 2002) (citations omitted).  A *Monell* claim requires that: "(1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Johnson*, 500 F.Supp.3d at 459; *See, e.g., Bd. of Comm'rs of Bryan Cnty., v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

17

A *Monell* claim cannot exist "where there is no underlying constitutional violation by the employee." *Young v. City of Mount Rainier*, 238 F.3d 567, 579 (4th Cir. 2001) *abrogated on other grounds by Short v. Hartman*, 84 F.4th 593 (4th Cir. 2023).  Because Plaintiffs have not alleged a constitutional violation by Officer Tinsley, the *Monell* claims against Bladensburg, BPD, and Chief Collington, Counts I and II, must be dismissed.

## B. State Law Claims

The remaining claims arise under the Maryland Constitution and Maryland state law, and there is no independent basis for federal jurisdiction. Under 28 U.S.C. § 1367(c)(3), "District Courts may decline to exercise supplemental jurisdiction over a claim . . . [where] the district court has dismissed all claims over which it has original jurisdiction[.]"[6]

> "[A] district court has inherent power to dismiss the case or, in cases removed from State court, to remand, provided the conditions set forth in [28 U.S.C.] § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001); see also *Arbaugh* [*v. Y&H Corp.*], 546 U.S. [500, 514 (2006)] ("[W]hen a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims."). In determining whether to remand supplemental state and county-law claims to state court, a district court must consider "convenience and fairness to the

---

[6] Post-removal amendment to delete all federal claims results in mandatory remand of supplemental state law claims because the federal court loses jurisdiction over the action.  *Royal Canin U.S.A. v. Wullschleger*, 604 U.S. 22 (2025).

parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (*citing Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Growth Horizons, Inc. v. Delaware Cnty., Pa.*, 983 F.2d 1277, 1284 (3d Cir. 1993)). Generally, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7;

*White v. Am. Fed'n of State Cnty. & Gov't Emps. Union Loc. 2250*, No. 23-CV-3161-DKC, 2024 WL 3161589, at *4 (D. Md. June 25, 2024).

This case is still in its early stages and the remaining claims present potentially complicated questions of state law. The court will exercise its discretion and remand Plaintiffs' state claims to state court, which is better suited to adjudicate those claims.

## IV.  Conclusion

For the foregoing reasons, Officer Tinsley's motion to dismiss will be granted with respect to the federal claim asserted in Count III Bladensburg, BPD, and Chief Collington's motion to dismiss will be granted with respect to the federal claims asserted in Counts I and II.  The remaining state law claims will be remanded to state court for further consideration.  A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge
